[No. 19513.   Department Two.   January 4, 1926.]

MIKE TONKOFF, *Respondent,* v. ROCHE FRUIT & PRODUCE
COMPANY, *Appellant.*[1]

[1] STATUTES (83)—RETROSPECTIVE CONSTRUCTION—IMPAIRING VESTED
RIGHTS.   Rem. 1923 Sup., § 8298, providing that commission
merchants cannot legally charge more than ten per cent on
sales, unless a contract therefor is made in writing, can be
given no retroactive effect to defeat the repayment of advances
to a grower under a contract made prior to the taking effect
of the act; since to do so would impair vested rights.

[1] FRAUDS, STATUTES OF (7-1)—STIPULATION AS TO TIME.   Rem.
Comp. Stat., § 5825, only makes an oral contract void when, "by
its terms," it is not to be performed within one year from the
making thereof; hence it has no application to a contract made
November 28, 1922, to make advances to an apple grower for
the season of 1923, which fixes no time for the performance and
which might have been completed within one year.

Appeal from a judgment of the superior court for
Yakima county, Nichoson, J., entered May 11, 1925,
upon findings in favor of the plaintiff, in an action on
contract, tried to the court.   Reversed.

*Grady & Velikanje,* for appellant.

*Shumate & Cheney,* for respondent.

MACKINTOSH, J.—According to the amended com-
plaint, between September 1, 1923, and June 30, 1924,
the respondent delivered to the appellant, a commission
merchant, for sale on commission, a large quantity of
apples, and the appellant deducted from the proceeds
of the sale over $2,000; it is claimed that, pursuant to
ch. 134, Laws of 1923, p. 366 [Rem. 1923 Sup., § 8292],
the appellant could not have legally charged over
$1,200.   The prayer is made for the amount of the
over-payment.   According to the appellant's answer,

[1]Reported in 242 Pac. 3.

the respondent and appellant entered into an oral contract by which the appellant was to dispose of respondent's 1923 crop of apples, for the agreed compensation of fifteen cents per box; that the appellant should advance to the respondent sufficient money to raise and harvest his crop, and furnish him with necessary supplies; that the money had been so advanced and a chattel mortgage given by the respondent on the 1923 crop; that further money had been advanced by the appellant to respondent and supplies furnished; that respondent delivered his 1923 crop as it was harvested, and that the appellant, pursuant to the contract, sold it and deducted from the proceeds the money advanced, the value of the supplies furnished and the agreed commission, and remitted the balance, after having cancelled and released the chattel mortgage. Upon the trial, objection was made to the introduction of any evidence on the part of the appellant based upon that portion of the answer which we have outlined, and fifteen cents a box, amounting to more than the 10% allowed by ch. 134, Laws of 1923, the appellant was held to have been entitled to only the lesser amount.

[1]   Does ch. 134, Laws of 1923, operate retrospectively and nullify the oral contract between the parties? The general rule is that the statutes will not be given a retrospective effect unless the intent of the legislature to so provide is clearly expressed. *State ex rel. American Savings Union v. Whittlesey,* 17 Wash. 447, 50 Pac. 119; *Rogers v. Trumbull,* 32 Wash. 211, 73 Pac. 381, where this appears:

"Retroactive statutes are generally regarded with disfavor. Those not remedial will not be construed to operate retrospectively unless the intent that they shall do so is plainly expressed."

See, also, *Pierce v. Pierce,* 107 Wash. 125, 181 Pac. 24; 25 R. C. L. 786; 36 Cyc. 1205.

The supreme court of the United States in the case of *United States v. Heth,* 3 Cranch (U. S.) 399, said:

"Words in a statute ought not to have a retrospective operation, unless they are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied."

Especially is it true that a retroactive effect will not be given to statutes where to give them that effect would be to impair vested rights. This court said, in *Graves v. Dunlap,* 87 Wash. 648, 152 Pac. 532, Ann. Cas. 1917B 944, L. R. A. 1916C 338:

"It is a rule of construction that a statute will not be given a retroactive effect unless by its terms it is shown clearly that that was the legislative intent  .   .   . But if the statute were to be given a retroactive construction, it is plain that the respondent had acquired such a property right  .   .   .   that it could not be taken away without due process of law."

Again, in *State v. Natsuhara,* 136 Wash. 437, 240 Pac. 557, we said:

"There is another reason why the construction contended for by the state should not be given, if the act is reasonably susceptible of being construed as not to apply to valid prior leases. If it should be given a construction as applying to such leases, its constitutionality in this regard would be a grave question. It would mean that property lawfully acquired might, by act of the legislature subsequently passed, be taken from the lawful owner and given to the state without compensation.

"It is argued that since this act was passed by the legislature in the exercise of the police power, this may be done. We know of no authority which so holds."

In *McClellan v. Pyeatt,* 66 Fed. 843, the court refused to construe a statute to be retroactive where vested

interests would be affected, saying that "the manifest injustice of such a result forbids any such interpretation of this act."

In *McGavock v. Ducharme,* 192 Mich. 98, 158 N. W. 173, it was held that the rule that statutes are not to be construed retrospectively unless plainly intended applies with peculiar force to those which would impair or destroy vested rights, the court using this language:

"Act 238, P. A. 1913 . . . had no force as law until the time it took effect in August, 1913, and therefore did not affect this contract. See *Rice v. Ruddiman,* 10 Mich. 125; *Price v. Hopkin,* 13 Mich. 318; 36 Cyc. 1192. When it did acquire the force of law, it did more than state a rule of evidence, as is contended. It deprived all contracts within its purview of legality, and impaired their obligation. But it could only have this effect on contracts made subsequently; for to affect contracts made previously would impair their obligation, and thus violate the federal Constitution."

In *Chew Heong v. United States,* 112 U. S. 536, 28 Law Ed. 770, the court said:

"Courts uniformly refuse to give to statutes a retrospective operation, whereby rights previously vested are injuriously affected, unless compelled to do so by language so clear and positive as to leave no room to doubt that such was the intention of the legislature."

That the appellant in this case had acquired a vested right by reason of this contract is hardly open to dispute; for, by virtue of this contract, it had, according to its answer, advanced various sums to the respondent, which had made possible the growing of the 1923 crop. It had furnished supplies which, together with the advances, had brought into being the crop which had been contracted to be delivered, and had taken a mortgage upon that crop. By these acts it had secured a vested right in the crop itself, and to allow that

vested right to be impaired by giving a construction to the statute which is not imperatively demanded, is contrary to the holdings of the authorities.

Section 7 of the Laws of 1923, p. 369 [Rem. 1923 Sup., § 8298], which provides that commission merchants cannot legally charge more than 10% on sales unless a contract for more than that amount is in writing, is in effect the enactment of a statute of frauds; and this court, considering a similar statute relating to commissions of real estate brokers, in *Dean v. Williams*, 56 Wash. 614, 106 Pac. 130, held that, where an oral contract was valid at the time it was made, it was not rendered invalid or unenforcible by subsequent legislation. It was held not to operate restrospectively. This court said:

"Referring first to the defense that this contract for payment of commission is void because not in writing, learned counsel for appellants contend it is void under Laws of 1905, p. 110, which requires such contracts to be in writing. That law, however, was not passed until after the making of this contract, and it hardly needs citation of authority to show that such a statute is not retroactive. 20 Cyc. 281. Our attention is not called to any authority in support of counsel's contention, which seems to be, because the contract is sought to be enforced after the enactment of the statute, it is therefore required to have been in writing."

This decision is conformative with the general rule as stated in 27 C. J. 304:

"The statute of frauds is not retroactive and does not affect contracts or conveyances made before its enactment. But under the view that the statute is merely a procedural regulation, going only to the remedy, and not affecting the validity of the contract, it has been held to apply to contracts made, or causes of action accruing, before the statute took effect."

The last sentence in this quotation is of no benefit to the respondent for the reason that this court has held

that the statute of frauds is not a mere procedural regulation, going only to the remedy, but that it affects the validity of the contract itself. "Our statute does not go to the question of the enforcement of the contract but it affects the contract itself." *Hendry v. Bird,* 135 Wash. 174, 237 Pac. 317, 240 Pac. 565.

Section 7, ch. 134, Laws of 1923, p. 369, has the same effect as the general statute of frauds, although the language of the two acts is different. While § 7 does not provide for the invalidity of the oral contract in the same terms as the general act, yet the fact that a penalty is imposed upon one who violates the act and receives in excess of 10% on sales, unless a greater amount is provided for in a written contract, makes this provision amount to a prohibition and makes the effect of the two acts the same.

"Every contract made for or about any matter or thing which is prohibited and made unlawful by any statute is a void contract, though the statute itself doth not mention that it shall be so, but only inflicts a penalty on the offender, because the penalty implies a prohibition, though there are no prohibitory words in the statute." Note.—2 Elliott on Contracts, § 666.

The rule that the act of 1923 can have no effect on the contract of November, 1922, has been adhered to in many jurisdictions, as appears from the following cases: *Staehlin v. Hoffmeister,* 121 Mo. App. 24, 97 S. W. 970; *Mayborne v. Citizens' Trust & Sav. Bank,* 46 Cal. App. 178, 188 Pac. 1034; *Hodges v. Johnson,* 15 Tex. 570; *McDonald v. Stewart,* 18 La. 90; *Collin v. Kittelberger,* 193 Mich. 133, 159 N. W. 482; *Gillmore v. Executor of Shooter,* 2 Modern 310, 86 Reprint, 1091.

In *Keefe v. Keefe,* 19 Cal. App. 310, 125 Pac. 929, is this language:

"Since this contract was made, sections 1624 of the Civil Code and 1973 of the Code of Civil Procedure

have been amended so as to require contracts like this one to be in writing; and at the trial defendants insisted that this contract came within those sections as amended. They have not pressed the point in this court, and may be deemed to have abandoned it, as well they might; for it is wholly without merit. The case was not within the sections as they read at the time this contract was made. *Stewart v. Smith,* 6 Cal. App. 152, 91 Pac. 667. And certain it is that the amendments should not have a retroactive effect, and operate to make void a contract valid at the time of its execution. 29 Am. & Ency. of Law, 814; 20 Cyc. 281.''

[2] The respondent presents the additional argument that, even though § 7 may not be retroactive, under the general statute of frauds, the contract of November, 1922, was void for the reason that it was not to be performed within one year from the making thereof. As has been often noted, § 5825, Rem. Comp. Stat., so far as is here involved, only makes a contract void which *"by its terms is not to be performed in one year from the making thereof."* Under this provision, it is necessary that the contract by its terms shows that it cannot be performed within the year. The contract was made on November 28, 1922, and fixes no time for its performance, and the court cannot say that all its terms could not have been complied with prior to November 28, 1923. It is quite possible that the performance could be entirely made within that time, and it is of no consequence that the appellant and the respondent may have been of the opinion that the contract might extend beyond the year, or that, as a matter of fact, it did so extend. The true test is not what the parties expected or what actually happened, but whether the contract by its terms must endure longer than the year. In order to bring this contract within the operation of the statute, where the intention of the parties is that it extend beyond the year, that intention

must be shown by the terms of the contract. In *In re Field's Estate*, 33 Wash. 63, 73 Pac. 768, the rule is announced that the necessity of the duration beyond the year, not the expected duration, is the test. See, also: *Union Sav. & Trust Co. v. Krumm*, 88 Wash. 20, 152 Pac. 681; *Hendry v. Bird*, 135 Wash. 174, 237 Pac. 317, 240 Pac. 565; *Chaffe & Sons v. Benoit*, 60 Miss. 34; *Valley Planting Co. v. Wise*, 93 Ark. 1, 123 S. W. 768. This last case is strikingly similar to the case at bar. It involved an oral contract, made in December of one year, to superintend the making and gathering of the next year's crop of cotton, where it appeared that the contract probably was not to be performed within the year. The court said, however:

"It is well settled that the statute only includes those contracts or agreements which, according to a fair and reasonable interpretation of their terms in the light of all the circumstances which enter into their construction, do not admit of performance in accordance with their language and intention within a year from the time they were made; and that it includes no agreement, if, consistently with its terms, it may be performed within that time."

There is nothing in the record, nor of which we can take judicial cognizance, to warrant our holding that the contract could not have been performed within the year. We cannot but assume that the crop of apples could be raised during the year 1923 and delivered to appellant and sold prior to November 28, 1923. As a matter of fact, the record shows that the 1923 crop was delivered some two weeks prior to that time, and it may have been possible to have sold it during those two weeks.

Our conclusion, therefore, is that the trial court was in error in refusing to allow the appellant to prove the oral contract and in holding that that contract was

rendered void by the act of 1923. The case is, therefore, remanded to the trial court for a new trial conformative to this opinion.

Reversed.

TOLMAN, C. J., PARKER, MAIN, and MITCHELL, JJ., concur.